IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DEBORAH BEARER | : | CIVIL ACTION No.: 19-5415 |
| Plaintiff, | : |  |
| v. | : |  |
|  | : |  |
| TEVA PHARMACEUTICALS USA, INC, et al. | : |  |
| Defendants | : |  |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                April 8, 2021

## I.     Background

Presently before the Court is Defendants Teva Pharmaceuticals USA, Inc., Teva Sales and Marketing, Inc., and Teva Branded Pharmaceuticals Products R&D Inc.'s (collectively "Teva" or "Defendant") Motion for Leave to File an Amended Answer (Doc. 48), Plaintiff Deborah Bearer's ("Bearer" or "Plaintiff") Response in Opposition to the same (Doc. 49), and Defendant's Reply (Doc. 54). By its motion, Teva seeks leave to amend its Answer to Bearer's First Amended Complaint (Doc. 29) to withdraw Affirmative Defenses 13 and 14, which correspond to the *Faragher*/*Ellerth*[1] affirmative defense. Bearer further seeks sanctions of costs and attorney's fees against Bearer (Doc. 48 at 12–14), and Bearer in her response cross-moves for sanctions against Teva. (Doc. 49 at 17–18.) As the facts of this case are well known to the parties, we present here only the facts relevant to the current motion.

---

[1] The *Faragher*/*Ellerth* affirmative defense enables employers to avoid liability in hostile work environment claims where the employer shows "that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Minarsky v. Susquehanna Cty.*, 895 F.3d 303, 310 (3d Cir. 2018) (internal citations and quotations omitted).

1

Teva filed this motion on March 12, 2021, after initially raising the issue to Bearer's counsel via email on February 3, 2021. (Doc. 48-2.) At that time, Defendant sought Bearer's consent to amend its Answer to withdraw affirmative defenses. Bearer's counsel stated that Bearer would consider consenting, and counsel for the parties corresponded regarding the same throughout the remainder of February and early March 2021. (Doc. 48 at 5.) During that time, Defendant created and shared drafts of its proposed amended answer and a stipulation that Bearer had requested accompany the amended answer to clarify that Defendant's withdrawal of Affirmative Defenses 13 and 14 amounted to a full waiver of the *Faragher/Ellerth* defense. *Id.* However, on March 12, 2021, Bearer ultimately informed Defendant that she would not consent to Defendant's filing an amended answer. *Id.* at 6. On that same date, Defendant filed this motion.

Defendant seeks to amend its answer to withdraw its *Faragher/Ellerth* defense because it determined "in connection with its investigation and fulsome discovery, that there is not sufficient record evidence to support" it, and because removing the unsupported defense would "narrow the scope of the pleadings and streamline litigation." (Doc. 48 at 9–10.) Conversely, Bearer opposes the motion because she "engaged in discovery regarding [the *Faragher/Ellerth* defense] and incurred fees and costs in connection" with doing so. (Doc. 49 at 2.) Further, Bearer argues that Teva's assertion of the defense could bear on its credibility and the admissibility of evidence at trial. (Doc. 49 at 2, 12.) For the reasons set forth below, we grant Teva's motion for leave to amend its answer, but deny its motion for sanctions and Bearer's cross-motion for the same.

## II. Discussion

We first consider Teva's motion for leave to amend it answer to withdraw its Affirmative Defenses 13 and 14, which correspond to the *Faragher/Ellerth* defense, and determine that leave will be granted. Next, we consider the parties competing motions for sanctions and determine that no sanctions are warranted.

### A. Teva's motion for leave to amend

The parties are in agreement that, typically, Fed.R.Civ.P. 15(a) governs pleading amendments. However, in opposing Teva's motion, Bearer argues that the applicable legal standard in this scenario is Fed.R.Civ.P. 16 in that Teva's motion is untimely. Whereas Fed.R.Civ.P. 15 applies a "lenient" standard under which the court "should freely give leave where justice so requires," Fed.R.Civ.P. 16 requires the movant to show "good cause" to amend a pleading after the deadline for doing so. *See, e.g.*, *Watson v. Sunrise Senior Living Servs., Inc.*, 2015 WL 1268190, at *5–6 (D.N.J. Mar. 18, 2015). Bearer further argues that, even if we determine that Fed.R.Civ.P. 15 applies, we still should not grant Teva's motion under that rule's lenient standard. Accordingly, we must first determine which standard applies, and then whether Defendant's motion should be granted pursuant to the proper standard.

#### 1. Fed.R.Civ.P. 15 applies

As noted above, it is undisputed that Fed.R.Civ.P. 15 generally governs pleading amendments. *See* Fed.R.Civ.P. 15(a). On the other hand, Fed.R.Civ.P. 16 governs modifications to the court's scheduling order. *See* Fed.R.Civ.P. 16(b). Accordingly, where a scheduling order sets out a deadline for amending pleadings, and motion to amend is filed after that deadline, "the lenient Fed.R.Civ.P. 15(a)(2) standard that '[t]he court should freely give leave when justice so requires' yields to the [Fed.R.Civ.P. 16] good cause requirement." *Sang Geoul Lee v. Won Il*

3

*Park*, 720 F. App'x 663, 669 (3d Cir. 2017) (quoting Fed.R.Civ.P. 15(a)(2)) (internal citations omitted). The reason for the divergent standards is that an untimely motion to amend pleadings effectively requires the court to deviate from its scheduling order, which is governed by Fed.R.Civ.P. 16. *See, e.g., Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 118 (W.D. Pa. 2010) (collecting cases). Thus, "motions to amend which, in effect, operate to change the scheduling order, are controlled by Rule 16(b)." *Roquette Freres v. SPI Pharma*, Inc., 2009 WL 1444835, at *4 (D. Del. May 21, 2009) (citing *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 & n. 18 (3d Cir. 2000)).

     Here, Teva's motion to amend is not untimely because it does not "operate to change the scheduling order." Indeed, our scheduling order did not set a deadline for amending pleadings. Thus, there was no specific deadline after which Teva's current motion would have become untimely so as to trigger a Fed.R.Civ.P. 16 analysis. While Bearer argues that we should look to the discovery deadline to determine the motion's timeliness in the absence of an express deadline, that argument is unpersuasive here, where Teva's motion does not necessitate any further discovery. To the contrary, if Teva's motion has any impact on discovery, it would be to narrow the scope and, as Bearer points out, potentially render unnecessary some discovery that has already been taken.

     To be clear, we do not discount the various district court cases that Bearer cites where courts have considered discovery deadlines in determining whether a motion for leave to amend is untimely. Rather, we find them to be distinguishable from the scenario before us. Indeed, all of the cases Bearer cites involved motions for leave to *add* claims to pleadings. *See Capital Health Sys., Inc. v. Veznedaroglu*, 2019 WL 6324006, at *1 (D.N.J. Nov. 26, 2019); *Watson v. Sunrise Senior Living Servs., Inc.*, 2015 WL 1268190, at *10 (D.N.J. Mar. 18, 2015); *Nissen v. Rozsa*,

2011 WL 5240833, at *1 (D.N.J. Oct. 31, 2011); *Phillips v. Greben*, 2006 WL 3069475, at *3 (D.N.J. Oct. 27, 2006). Because adding, as opposed to withdrawing, claims or defenses is likely to necessitate further discovery, the fact discovery deadline may reasonably serve as a proxy for determining whether a pleading amendment deviates from the scheduling order so as to be considered untimely. However, a circumstance where a party attempts to amend a pleading in a manner that will necessitate further discovery is simply not before us. Because Teva's motion will not implicate further discovery, the discovery deadline does not bear on its timeliness.

Further, even the cases Bearer cites did not simply apply the fact discovery deadline as a hard cutoff for determining timeliness, as she would have us do. Instead, they consider the scheduling order as a whole to determine whether a motion deviates from it, including deadlines for fact discovery, expert discovery, dispositive motions, and trial dates. *See, e.g.*, *Capital Health Sys., Inc.*, 2019 WL 6324006, at *1 (considering deadlines for fact discovery and expert reports); *McDerby v. Daniels*, 2010 WL 2403033, at *6 (D. Del. June 16, 2010) (considering discovery deadline, dispositive motion deadline, and approaching trial date). Contrary to Plaintiff's assertions, considering our scheduling order as a whole serves only to further illustrate that Teva's motion is not untimely.

Our scheduling order set the fact discovery deadline for October 12, 2020. (Doc. 47.) However, it also set a March 9, 2021 deadline for close of "fact and expert discovery" and for the parties to "complete all supplements to discovery under FRCP 26(e), including expert reports."[2] (Doc. 30.) Further, we set a dispositive motion deadline of March 26, 2021, and we have yet to set any trial date. (Doc. 47.) Teva originally brought the issue of its amended answer to

---

[2] We later amended the scheduling order to allow expert depositions to continue until March 21, 2021. This amendment did not abrogate the previous scheduling order in its entirety, and the provisions discussed here from the prior scheduling order remained intact following this amendment. *See* Doc. 47.

5

Plaintiff's attention via email on February 3, 2021. At that point, expert discovery was still ongoing, the parties remained entitled to supplement fact discovery, and the dispositive motion deadline was more than seven weeks away. While Teva did not ultimately file the motion until March 12, 2021, that delay was a result of Teva's efforts to secure Plaintiff's consent to amend its answer and Plaintiff's indecisiveness regarding the same.[3] Despite this delay, Teva still filed its motion prior to the dispositive motion deadline, the expert deposition deadline, and only three days after the deadline for "supplements to discovery under FRCP 26(e)." Taken together, we conclude that Teva's motion does not "operate to change the scheduling order." It was therefore not untimely, and Fed.R.Civ.P. 16 is not invoked. Accordingly, we now turn to analyze Teva's motion pursuant to Fed.R.Civ.P. 15.

## 2. Fed.R.Civ.P. 15 Analysis

Fed.R.Civ.P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely grant leave when justice so requires." Fed.R.Civ.P. 15(a)(2). "[M]otions to amend pleadings should be liberally granted," *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004), and "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178 (1962)). Specifically, "a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Fraser v.*

---

[3] That Bearer gave serious consideration to consenting to the amendment when it was first brought to her attention is evidence that even she did not then consider Teva's motion to be untimely. That is, if Bearer believed the motion was in contravention of the scheduling order, as she now argues, her consent would have been irrelevant, as Fed.R.Civ.P. 16 would have required Teva to show "good cause" regardless of Bearer's consent.

*Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003). "In this Circuit prejudice to the non-moving party is the touchstone for denial of leave to amend." *Graham*, 271 F.R.D. at 122 (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)). Finally, "the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F.Supp.2d 695, 700 (E.D. Pa. 2007).

Bearer argues that Teva's filing of this motion "four months after the close of discovery" constitutes "undue delay," and that she would be prejudiced by the amendment in that she "relied on Defendants' assertion of the *Faragher/Ellerth* Affirmative Defense all throughout this litigation" and "focused her discovery efforts on the same." She further argues that Defendant's amendment will prejudice her "by precluding her from introducing certain evidence throughout the remainder of these proceedings, including at trial." Bearer has not, however, met her burden to establish either undue delay or prejudice.

First, we note that the concepts of undue delay and prejudice are intertwined. That is, "undue delay must be based on more than the mere passage of time." *Logan v. In-Ter-Space Servs., Inc.*, 2007 WL 2343868, at *2 (E.D. Pa. Aug. 15, 2007). In fact, "delay alone is an insufficient ground to deny leave to amend." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Rather, delay becomes "undue" when it places "unwarranted burden on the court" or when it becomes prejudicial by placing an "unfair burden on the opposing party." *Id.* "The question of undue delay requires that we focus on the movant's reasons for not amending sooner." *Id.* (internal citation omitted). Next, the "issue of prejudice requires that we focus on the hardship to the [non-moving party] if the amendment were permitted." *Id.* Specifically, courts should consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Id.*

7

Here, we find that Bearer has not met her burden to show undue delay, in part because she has also not met her burden to show prejudice. First, contrary to Bearer's assertions, Teva has proffered a reasonable basis for moving to amend its answer at this stage. Teva explained that it determined "in connection with their ongoing investigation and fulsome discovery, that there is not sufficient record evidence to support the successful invocation of the *Faragher/Ellerth* defenses." Further, Teva's delay in seeking to amend its answer is not facially unreasonable, as the motion was filed less than a year after Bearer's complaint, and was brought to Bearer's attention exactly eight months after Teva filed its initial answer. *See Arthur*, 434 F.3d at 204.

Moreover, Teva's delay results in neither "unwarranted burden on the court" nor "unfair burden to the opposing party." Indeed, as Teva points out, its withdrawal of affirmative defenses will actually lessen the burden on the court in that it would "narrow the scope of the pleadings and streamline litigation," thereby "preserv[ing] judicial economy." Further, Teva's amendment will not burden Bearer, as it would not "result in additional discovery, cost, and preparation to defend against new facts or new theories." To the contrary, Teva is seeking to *withdraw* affirmative defenses from its pleadings. This amendment would therefore *remove*, not add, a theory that Bearer would otherwise have to rebut. Under these circumstances, there is no additional prejudice to Bearer in allowing Teva to withdraw the defense.

Further, we are not persuaded by Bearer's argument that she would be prejudiced by Teva's withdrawal of the affirmative defenses in that it would allegedly "preclude her from introducing certain evidence" at trial. Bearer has cited no authority to support her assertion that a pleading amendment's potential impact on the ultimate admissibility of evidence is grounds for finding it to be prejudicial. Rather, the fact that Bearer may have discovered information relevant

8

to the defenses Teva now seeks to withdraw does not bear on our prejudice analysis, as it does not result in any increased burden to her. We express no opinion as to the impact of Teva's amended answer on any evidentiary questions. Thus, the concern Bearer has articulated here does not impact Teva's ability to remove affirmative defenses from its answer.

Taken together, we find that Plaintiff has failed to meet her burden to show "prejudice, bad faith, undue delay, or futility" sufficient to overcome the Fed.R.Civ.P. 15 directive that "[t]he court should freely grant leave when justice so requires." Accordingly, we will grant Teva's motion for leave to amend its answer to withdraw Affirmative Defenses 13 and 14, which correspond to the *Faragher/Ellerth* defense.[4] We now to turn consider whether sanctions against either party are appropriate and conclude that they are not.

### B. No Sanctions are Warranted

Both parties have raised issues as to whether the opposing party should be sanctioned. Teva moves for sanctions against Bearer pursuant to 28 U.S.C. § 1927 and Local Rule 83.6.1. (Doc. 48 at 12.) Bearer opposes the motion and cross-moves for sanctions against Teva. As set out below, we conclude that sanctions are not appropriate against either party.

28 U.S.C. § 1927 provides that, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Third Circuit has explained that this statute thus limits the imposition of sanctions to situations

---

[4] We note that Bearer has also requested that, in the event we granted Teva's motion for leave to file an amended answer, we require Teva to produce a corporate representative for a Fed.R.Civ.P.Fed.R.Civ.P. 30(b)(6) deposition to testify to the reasons for Teva's decision to withdraw the affirmative defenses. This request is denied. We accept Teva's assertion that any such exploration into the reasoning underlying Teva's counsel strategic decision to withdraw affirmative defenses from its answer, which it may "freely" do pursuant to Fed.R.Civ.P.Fed.R.Civ.P. 15, is not properly discoverable.

where an attorney has: "(1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct." *LaSalle Nat. Bank v. First Connecticut Holding Grp., LLC*, 287 F.3d 279, 288 (3d Cir. 2002) (citation omitted).

Similarly, Local Rule 83.6.1, provides, in relevant part:

(b) No attorney shall, without just cause, . . . present to the court vexatious motions or vexatious opposition to motions or shall fail to prepare for presentation to the court, or shall otherwise so multiply the proceedings in a case as to increase unreasonably and vexatiously the costs thereof.

(c) Any attorney who fails to comply with . . . (b) may be disciplined as the court shall deem just.

In determining whether sanctions are appropriate, we have carefully considered the correspondence between counsel regarding this dispute, as well as each parties' characterization of the same, and we conclude that neither parties' conduct constitutes "bad faith" warranting the imposition of sanctions. While it is regrettable that the parties assumed such contentious positions on this issue, we find that the aggressive advocacy exhibited by counsel on both sides does not cross into the realm of conduct warranting sanctions. In fact, that the parties opted to bring the issue of sanctions before the Court at all in this circumstance is unfortunate and unwelcomed. Accordingly, both parties' motions for sanctions will be denied.

### III.   Conclusion

For the reasons set forth above, we will grant leave for Defendant to amend its answer to withdraw its Affirmative Defenses 13 and 14, which correspond to the *Faragher/Ellerth* defenses. Further, we will deny both parties' motions for sanctions. Our order follows.